## Moyer and Brother's Appeal.
## Bauman's Estate.

| 87 | 129 |
|----|----|
| 145 | 51 |

Where an endorser of a negotiable note admits his liability at the time of the maturity of the note and accompanies such admission with an offer to "arrange the matter" with the holders, and thereafter by his conduct shows that he regards himself as liable, and asks for indulgence, these acts amount to a waiver of notice of demand and dishonor.

May 9th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Appeal from the Orphans' Court of *Lancaster county:* Of May Term 1878, No. 28.

Appeal of E. P. Moyer & Brother from the decree of the court, confirming the report of the auditor in the estate of Jeremiah Bauman, deceased.

The facts, in evidence, were these: On January 4th 1871, Joseph K. Bauman gave to E. P. Moyer & Bro., with whom he was dealing, the following note:

"$1700.                    Lancaster, January 4th 1871.

Ninety days after date I promise to pay to the order of E. P. Moyer & Bro., seventeen hundred dollars, without defalcation, value received.

Payable at First National Bank.          JOS. K. BAUMAN."

At the same time, as collateral security for the payment of this note, he gave them the following note:

"$1700.                    Lancaster, Pa., January 4th 1871.

Ninety days after date, I promise to pay to the order of Jer. Bauman (at) seventeen hundred dollars without defalcation, for value received.          JOS. K. BAUMAN.

Credit the drawer
    JERE. BAUMAN.
Endorsed JERE. BAUMAN."

On April 6th 1871 (April 7th being a legal holiday), the former note was sent to Lancaster and presented for payment, dishonored and duly protested. The latter note, falling due on the same day, was not protested, and whether payment was demanded and notice given does not appear, except as matter of inference from the acknowledgment of liability and promise to pay, as is to be extracted

6 NORRIS—9

from the correspondence which took place between Jeremiah Bauman and E. P. Moyer & Bro.

On April 6th 1871, Jeremiah Bauman wrote to E. P. Moyer & Bro. the following letter :

"Lancaster, April 6th 1871.

Messrs. E. P. Moyer & Bro.

Gents : I am sorry to say that Joseph was compelled to let his note go to protest to-day, for which you hold mine as collateral. How can I arrange the matter with you, as I am not prepared to pay it right away ?   Please let me hear from you."

On this a correspondence relative to the payment of the claim by Jeremiah Bauman arose, and from time to time he wrote letters to E. P. Moyer & Bro., in the following language :

July 25th 1871.  "J. K. Bauman's affairs are not yet settled up by his assignee.   Before that is done, the amount remaining due you by him cannot be determined."

January 10th 1872.  "On inquiry to-day I am informed that J. K. B.'s assignee contemplates making a dividend about the first of April, when you may expect to receive some money on account of your claim.   I will not give any notes, but will endorse as heretofore, if it will be of any service to you."

June 22d 1872.  "I received your letter a few days ago, since which I called on J. K. B.'s assignee's attorney to ascertain when his affairs would be settled.   He informed me that about the 1st of September a distribution would be made, when his indebtedness to you will be known.   I will then endeavor to arrange the matter with you.   At this time it keeps me busy to manage my own affairs, as we are not turning any leather to market yet.   Bark is coming in so fast that it keeps me busy to raise funds to pay for it."

April 7th 1873.  "I received your letter some days ago.   In reply have to say that, having failed in disposing of some property that I offered for sale, with a view of raising funds, I am not prepared to pay anything on J. K. B.'s account ; it is as much as I can do to meet my own liabilities at present.   I have fifteen shares Lancaster City Fire Insurance stock, par value, $50 per share, which I will exchange with you for the note if you wish it.'

Jeremiah Bauman died on the 3d day of October 1875, leaving a will.   The executors filed an account of their administration, and at the audit for distribution of the balance a claim was made on the note above set forth, on the ground that the deceased had so acknowledged his liability to pay as to dispense with the necessity of proving demand, refusal and notice.   The auditor rejected the claim, being "of the opinion that there is no such clear, absolute and unconditional promise as dispenses with the proof of present-

[Moyer & Brother's Appeal.]

ment and notice of dishonor." To this decision exceptions were filed, but overruled by the court, which confirmed the auditor's report; whereupon this appeal was taken.

*H. R. Fulton, Wm. Aug. Atlee* and *Sharp & Alleman*, for appellants.—A subsequent promise to pay, or an acknowledgment of liability, amounts to a waiver of a want of due notice: Levy *v.* Peters, 9 S. & R. 125; Sherer *v.* Easton Bank, 9 Casey 134; Loose *v.* Loose, 12 Id. 538; Uhler *v.* Farmers' National Bank of Bucks Co., 14 P. F. Smith 406. This latter case expressly decides that the promise need not be unconditional. See also Reynolds *v.* Douglass, 12 Peters 497; Byles on Bills *237.

*N. Ellmaker* and *D. G. Eshleman*, for appellee.—The promise must not be conditional, or if so, must have been accepted: 1 Story on Promissory Notes, sect. 187; 1 Parsons on Notes and Bills 600. The letters, if not mere requests for time, under the belief that the note was protested, are mere proposals for settlement and create no liability. Knowledge of the non-payment is not knowledge of non-presentment, and a promise to be binding must be made with full knowledge of laches: 1 Parsons on Notes and Bills 605; Richter *v.* Selin, 8 S. & R. 425, 437; Loose *v.* Loose, *supra*; Uhler *v.* Bank, *supra*; Walker *v.* Rogers, 40 Ills. 278; Arnold *v.* Dresser, 8 Allen 435; Tardes *v.* Boyd, 26 Gratt. 631; Story on Partnership, § 275; 2 Smith's Leading Cases, 7 Am. ed. 78. The burden of proof is upon the plaintiff: Morgan *v.* Peet, 32 Ills. 288; Farrington *v.* Brown, 7 N. H. 271; Trimble *v.* Thorne, 16 Johns. 153.

Mr. Justice TRUNKEY delivered the opinion of the court, May 27th 1878.

To correctly interpret the letter of April 6th 1871, it is well to keep in view the then positions of the parties to the notes. Joseph K. Bauman was the maker and E. P. Moyer & Bro. were the holders. The notes of same date, for like time, for same amount, and one was given and held as collateral security for the other. The one given for the debt was payable at the First National Bank; the other at Lancaster, the place where both were made. The latter was payable to Jer. Bauman, who endorsed it to the holders. In legal computation of time, the notes matured on April 7th 1871, but that being a public holiday, by virtue of the statute (Pamph. L. 1869, p. 26), the holders could make demand and give notice on that, or the preceding day, at their option. The one held for the debt was protested on the 6th. The same day Jer. Bauman writes from Lancaster, where both were payable, to E. P. Moyer & Bro., Philadelphia: "I am sorry to say that Joseph was compelled to let his note go to protest, for which you hold mine as col-

lateral." He knew the other note was the one owing by the maker, that it was protested, and that his own endorsement was held as collateral security. With full knowledge of the facts, thus explicitly stated, he adds, "How can I arrange the matter with you, as I am not prepared to pay it right away." Was that a trick to fend protest of the collateral, or was it an acknowledgment of liability and request for forbearance ? Surely the latter. In the light of the circumstances how can his words admit of other interpretation ? But were his meaning doubtful he himself gave the key to unlock it, in his subsequent letters recognising his liability. January 10th 1872, he wrote, "I will not give my notes, but will endorse as heretofore, if it will be of any service to you." Again he wrote that the assignee of J. K. Bauman would make distribution about the 1st of September; adding, "I will then endeavor to arrange the matter with you." April 7th 1873, he wrote that he had failed to raise funds and was not prepared to pay. These letters, though not containing an express acknowledgment or promise, show how he understood his relation to Moyer & Bro. after April 6th 1871. They are not the language of one who denied a claim, or had intended to mislead the holder into a false belief that he would pay the note. The act of Jer. Bauman, on the day of the protest of J. K. Bauman's note, must be considered as an admission of his liability to the holder and promise to pay it.

Was such act a waiver of demand and notice? "In strictness of terms a waiver of protest is an agreement made before or at the time of maturity of the note, and a promise to pay after maturity, notwithstanding there had been no protest, is a new undertaking." Per AGNEW, J., Uhler v. The F. N. Bank, 14 P. F. Smith 406. Yet, not adhering to strictness of terms, in Sherer v. The Easton Bank, 9 Casey 134, it is said : "that a subsequent promise to pay the note by an endorser, who has full knowledge of all the facts, amounts to a complete waiver of the want of due notice, is settled, and settled as matter of law. So does a part payment." The promise need not be expressed in so many words. It is sufficient, if by reasonable intendment and interpretation, the language imports, or naturally implies, a promise to pay it. Story on Prom. Notes, § 364. After maturity of the note, words or acts which would not be sufficient to amount to a waiver, or new undertaking, may be amply sufficient to form a strict waiver, when uttered or done before or at maturity, for the obvious reason that in the latter case the holder may be misled. Demand and notice may be waived by an act of the endorser or drawer, calculated to put the holder off his guard, and preventing him from treating the note as he would otherwise have done. A parol promise to pay, made at the time of, or subsequent to, the endorsement; a request by the endorser for forbearance ; a declaration by the endorser of a check to the holder, that the maker can not pay, that the latter has made an assignment and has therein

[Moyer & Brother's Appeal.]

preferred him ; an inquiry by the holder of the endorser, on the day the note matured, if it would be best to call on the makers, and reply that it would be of no use; respectively have been held as waiver of demand and notice. No general rule can be laid down as to what words or acts will amount to a waiver, except they must be such as fairly to lead a reasonable man to believe that the endorser did not wish the regular course, in making demand and giving notice, to be pursued. Unless such be the direct and natural inference from the words or acts, and they be so clear and pointed as to leave no reasonable doubt as to what was intended, they are not within the rule : 1 Parsons on Notes and Bills 582–594.

Whether a promise, request or acknowledgment was made, and whether made with full knowledge of all the material facts, are questions of fact. The construction to be put on facts found is a question of law. An auditor's finding of facts will not be set aside, save for strong reason. As already appears we accept the auditor's report of facts, except his inference that there was no waiver of protest. He seems to have regarded the letter of May 6th 1871, as if subject to principles applicable to matters occurring after maturity of the note, and written in ignorance of the facts. Without recapitulation, we are impelled to a different conclusion, upon which the claim of E. P. Moyer & Bro. should be allowed.

　　　　　　　　Decree reversed at costs of appellees, and record ordered
　　　　　　　　　　to be remitted to the Orphans' Court for further pro-
　　　　　　　　　　ceedings.